UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSHUA T. NARUG,   )<br>        Plaintiff,   )<br>                    )<br>    v.           )<br>                    )<br>ANDREW SAUL, Commissioner of the   )<br>Social Security Administration,   )<br>        Defendant.   ) | CAUSE NO.: 2:19-CV-490-JD-JEM |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Joshua T. Narug on December 20, 2019, and Plaintiff's Initial Brief in Support of Summary Judgment [DE 15], filed on June 11, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 22, 2020, the Commissioner filed a response, and on August 5, 2020, Plaintiff filed a reply.

On April 15, 2020, Judge Jon E. DeGuilio entered an Order [DE 12] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the decision of the Administrative Law Judge be reversed and the case remanded for further proceedings.

**I.    Background**

On September 22, 2016, Plaintiff filed an application for benefits alleging that he became disabled on October 2, 2014. Plaintiff's application was denied initially and upon reconsideration. On August 2, 2018, Administrative Law Judge ("ALJ") Trina Moore held a video hearing, at which

Plaintiff, with an attorney, and a vocational expert ("VE") testified. On October 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since October 2, 2014, the alleged onset date.

3. The claimant has the following severe impairments: obesity, lumbar degenerative disc disease, degenerative joint disease of the bilateral shoulders and ankles, right leg neuropathy, hypermobile joint syndrome of foot, and polysubstance abuse disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that he can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for 2 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can occasionally reach overhead bilaterally. He requires a sit/stand option throughout the day where he can alternate between standing for one hour and sitting for 30 minutes without being off-task.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-44 on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 2, 2014, through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v.*

*Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III.  Analysis**

Plaintiff argues that the ALJ erred in relying on an outdated opinion of a state agency consultant and substituting her own judgment for that of any medical professional. The Commissioner argues that the ALJ's findings were supported by substantial evidence. The ALJ gave great weight to the March 2017 opinion of the non-examining agency medical consultant who reviewed the medical record as of that date, explaining that she found the opinion consistent with the overall record. The ALJ did not give any weight to the opinion of Plaintiff's treating podiatrist, concluding that the opinion was "more of a medical statement" than a medical opinion

4

requiring analysis. The ALJ did not specifically address any other medical opinions in this section of her analysis. Plaintiff argues that the agency physician's opinion was based on outdated information and did not take into account Plaintiff's subsequent foot surgery, treatment for gastrointestinal issues, fall and left foot injury, and newly demonstrated degenerative disc etiology. The Commissioner argues that the ALJ's decision about the weight given to the agency reviewer's opinion was based on consideration of the entire record and that the new evidence did not require a medical expert to put it into context, but could be incorporated into the RFC by the ALJ.

Even though the treating specialist's statement may not rise to the level of a medical source opinion entitled to controlling weight, *see Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (holding that treating physician opinion is entitled to controlling weight "as long as it is supported by medical findings and consistent with substantial evidence in the record") (citing 20 C.F.R. § 404.1527(c)(2) (replaced by 20 C.F.R. § 404.1520c for claims filed after March 27, 2017), the statement was made after the agency physician reviewed Plaintiff's records and therefore was not included in her review. In the time since the reviewer completed her opinion, Plaintiff underwent a second ankle surgery, had a follow-up MRI, visited the emergency room several times for dizziness and back pain, and received x-rays in December 2017 and April 2018 that revealed degenerative disease. The ALJ reviewed the hospitalization records and test results and concluded that Plaintiff was slightly more limited than the agency reviewer found, adding a sit/stand option because of the surgery that occurred after the reviewer's opinion. The Commissioner argues that none of the new test results or hospitalization records are new or decisive medical information, since they are all relatively straightforward, and there is no indication that Plaintiff's ankle surgery diminished his ability to walk. However, those are not arguments that the ALJ made: instead, the ALJ explicitly disregarded the medical statement of Plaintiff's treating podiatrist that Plaintiff

5

needed to use crutches, and did not mention that the other medical visits and test results were added to the record after the agency reviewer completed her analysis. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (discussing *Chenery* doctrine, i.e., an agency's lawyers may not defend its decision on grounds not supplied in the decision); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("[A]n ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ."). The ALJ did not acknowledge that the hospitalizations and test results were added to the record after the agency reviewer analyzed it.

As Plaintiff argues, he experienced a number of medical interventions after March 2017, including surgery and tests revealing new information and diagnoses of degenerative disease, and no trained medical professional has analyzed these new medical records in the context of Plaintiff's ability to work. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). However, rather than order a new medical assessment, either the ALJ did not notice that any of this information had not been addressed by a medical professional or she decided that none of the new information would change the medical examiner's conclusions, despite the fact that some of the test results revealed degenerative changes. The only medical opinion the ALJ analyzed from after March 2017 opined that Plaintiff needed crutches to walk. The ALJ assumed that the restrictions therein were treatment notes describing temporary limitations rather than a medical opinion requiring analysis as a statement of a treating provider, but she did not point to any other medical assessment of Plaintiff's ambulation or ankle stability since Plaintiff's second surgery. In addition, there has been

6

no analysis by a medical professional of the effect the degenerative disc disease may have on Plaintiff's capacity to work. "ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Moreno*, 882 F.3d at 729 (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *see also Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017) (describing the evidence of non-treating physicians who had not had access to the full medical record as "worthless").

Although it is possible, as the Commissioner argues, that Plaintiff's mobility improved after his second surgery, that is inconsistent with his testimony that after a short period of improvement following the ankle surgeries, he experienced even greater ankle pain and instability. AR 62-63. In addition, that argument is inconsistent with the ALJ's analysis. The ALJ specifically disregarded the opinion of Plaintiff's treating specialist limiting him to walking only with crutches, but she did not identify any other medical source after the surgery that addressed Plaintiff's mobility, nor is there any analysis by a medical professional of the information provided by the multiple x-rays and an MRI obtained after the examining reviewer wrote her report, despite findings of degenerative disease. *See Noonan v. Saul*, No. 19-3110, 2020 WL 7018901, at *3 (7th Cir. Nov. 30, 2020) ("Perhaps some evidence somewhere in the record addresses the question, yet it is not our responsibility to 'scour the record for supporting evidence.' That responsibility falls to the ALJ in the first instance, and the analysis on this front fell short.") (quoting *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)).

Plaintiff argues that this error is particularly consequential in his case, asserting that any restrictions greater than those in the RFC would lead to a conclusion that Plaintiff is disabled. The ALJ found that Plaintiff was limited to less than the full range of sedentary work, which still requires an employee to be able to walk and stand for up to two hours per day. *Noonan v. Saul*,

No. 19-3110, 2020 WL 7018901, at *3 (7th Cir. Nov. 30, 2020) ("The agency's regulations define 'sedentary work' as work that involves 'sitting' and 'occasionally' requires 'walking and standing.' Agency guidance further defines 'occasionally' in this context as 'occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.'") (quoting 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 347185 (July 2, 1996)). If there were any additional limitations to Plaintiff's ability to stand or walk, or if there was an increase in pain that caused him to spend more time off-task, that could affect whether there are jobs available that he can perform.

The ALJ based her opinion on a single report from a non-examining source, and one who did not have access to information about Plaintiff's surgery, subsequent hospitalizations, or a number of new medical tests. Because the Court cannot determine whether the ALJ properly took into account all of the medical evidence in the record, it cannot determine whether the RFC and ultimate determination of non-disability were supported by substantial evidence. The ALJ is reminded of her responsibility to create a logical bridge between the evidence and her conclusions to allow for meaningful review, and to obtain additional information as needed, particularly where there is new medical information and the Court recommends that the case be remanded to correct these errors. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion.").

### IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Initial Brief in Support of Summary Judgment [DE 15] and **REMAND** this matter for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 11th day of December, 2020.

        s/ John E. Martin_____
        MAGISTRATE JUDGE JOHN E. MARTIN
        UNITED STATES DISTRICT COURT

cc:    All counsel of record
        Judge Jon E. DeGuilio